UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CYNTHIA A. FROBEL,

                          **Plaintiff,**

v.                                                  3:03-CV-528 (NAM/DEP)

**COUNTY OF BROOME, DAVID HARDER,**
in his Official Capacity as Broome County
Sheriff, and **RONALD BILL,** in his Official
and Individual Capacity,

                          **Defendants.**
_____

APPEARANCES:                                  OF COUNSEL:

Law Offices of Ronald R. Benjamin            Ronald R. Benjamin, Esq.
126 Riverside Drive
Post Office Box 607
Binghamton, New York 13902

Broome County Attorney's Office              Aaron J. Marcus, Esq.
Edwin L. Crawford County Building         Assistant County Attorney II
Box 1766
Binghamton, New York 13902

Hon. Norman A. Mordue, D.J.:

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

    This action stems from defendant Deputy Sheriff Ronald Bill's attempt to collect upon a judgment entered against plaintiff Cynthia Frobel.  Presently before the Court is a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure by defendants County of Broome, Broome County Sheriff David Harder, and Deputy Sheriff Ronald Bill.  The amended complaint, filed pursuant to 42 U.S.C. § 1983, alleges that defendants violated

plaintiff's right to be free from illegal search and seizure and excessive force and her right to due process, in violation of the Fourth, Fifth, and Fourteenth Amendments. The amended complaint further alleges that the County of Broome and the Broome County Sheriff's Department failed to properly train, and to take corrective action against, its officers. The amended complaint also contains a pendent state claim for negligence and gross negligence.

## II. THE EVIDENCE ON THE MOTION

In support of their motion, defendants have submitted plaintiff's testimony from her N.Y. GEN MUNIC. LAW § 50-h hearing and deposition, and a number of affidavits, including one from Deputy Sheriff Ronald Bill, whom plaintiff claims used excessive force against her. Deputy Bill states:

> 2. Pursuant to Article 52 of the CPLR, I am authorized to execute upon valid judgments.
> 3. On March 22, 2002 I arrived at the apartment of Ms. Frobel, address, in an attempt to execute upon a valid judgment against her.
> 4. I knocked on the door and advised Ms. Frobel of who I was, and requested that she allow me into her residence. After some discussion and Ms. Frobel contacting the Broome County Office of the Sheriff to verify my identity, Ms. Frobel opened the door and allowed me into her residence.
> 5. Thereafter, I handed Ms. Frobel a copy of the judgment and advised her that I was present to collect upon it.
> 6. After she advised me that she did not have the money to satisfy the judgment, I informed her that it was within my power to execute upon whatever personal property she might have in her home, including her television and home computer.
> 7. At this Ms. Frobel became quite distraught, and vehemently advised me that I would not be taking anything from her home.
> 8. As time progressed, Ms. Frobel became increasingly hostile towards and began screaming for me to get out of her apartment culminating in her placing her hands on my arm and beginning to push me out of the apartment.
> 9. At this point, I grabbed Ms. Frobel's left hand off of me and pushed her back against her refrigerator, which was between 5 to 10 feet from where we had been standing, in attempt to restrain and at

2

the same time calm Ms. Frobel.

10. She finally calmed down only after I advised her that I would be forced to place her under arrest if she continued to behave in that manner.

11. Force was used only as a last resort in this matter, and was applied only after a hysterical Ms. Frobel began to push me out of her apartment. At the time I initiated the use of force, I did perceive this woman to be a possible threat to my personal safety: she was hysterical and yelling at me and was growing progressively more hostile; we were in her kitchen, and presumably in close proximity to kitchen knives or other utensils; and ultimately attempted to push me out of her apartment.

12. Additionally, the amount of force used was proportionate to the perceived threat, and in response to the situation. Ms. Frobel was resisting my force, and admitted to being around 220 pounds on the day of the incident. A certain amount of force was necessary to protect myself from the perceived threat, restrain Ms. Frobel, and calm her down. The amount of force I incorporated was reasonable under the circumstances.

13. She finally presented me with a check made out to her in the amount of roughly $400.00. I advised her that we would go to the bank where she could cash that check and that I would take a portion of the money to pay off a portion of the judgment and that we would then set up a payment plan.

14. At no point in time after the physical encounter, did Ms. Frobel advise me that she had been injured in any way or was feeling pain in any part of her body. She also did not request medical treatment at any point in time.

15. Prior to our discussions regarding payment of the judgment, Ms. Frobel contacted 9-1-1 and requested that the police be dispatched to her apartment. However, when a Village of Endicott patrol car arrived on the scene, followed soon thereafter by a Broome County Sheriff's vehicle, Ms. Frobel made no attempt to speak with any of the officers on the scene.

16. Ms. Frobel did agree to go to her bank to cash the check, and ultimately, gave me $300.00 in cash. Arrangements were thereby made where Ms. Frobel agreed to pay $50.00 a month until the judgment was satisfied.

17. I have completed the Article 35 "Use of Force" training, and am fully familiar with all protocols concerning the "use of force".

Aff. Ronald Bill.

In opposition to the motion and in an effort to show a material issue of fact requiring trial on her excessive force claim, Ms. Frobel submitted an affidavit, in which she states, in relevant part:

> 3. When Ronald Bill first came to my home I was in my night clothes and was doing dishes when I heard a knock on the door.
> 4. I looked through my peephole and saw a man in plain clothes who said he was a deputy sheriff but would not tell me the purpose for which he was at my door. I therefore called the Sheriff's Department to verify that he was in fact a law enforcement officer and upon doing so let him into my home.
> 5. After he came in he was rude and abusive from the outset, telling me he was there to collect on a judgment. Contrary to the statement in paragraph 6 of his affidavit that it was within his power to take whatever property I have in my home, he simply said he was going to take my personal property, including my television set, home computer and couch. He said he could not fit them in his car, so they would sell my things at auction without regard for how much money they brought and I would most likely still owe money.
> 6. I naturally became upset and asked him to leave my home, and when he refused to do so but continued his rude and abusive behavior and his threats to take my personal property, I called 911 to have the police remove him from my home.
> 7. Although I repeatedly asked him to leave my home, he became enraged when I called 911 and started to physically assault me, grabbing my arm and yanking it up over my head and digging his fingers into my arm so as to cause me substantial pain as well as fear of whether he was going to kill me or not. I still have nightmares from the emotional harm I suffered that day.
> 8. I would further note that in paragraph 8, where he says I became increasingly hostile toward him and began screaming at him to get out of my apartment and placing my hands on his arm, none of that is true. I was never hostile, only very scared, upset and crying.
> 9. I was never hostile to him despite repeatedly asking him to leave my home, and I never put my hands on his arms. I believe I brushed his elbow in the course of pointing him toward the door but that was all.
> 10. Indeed, where he says he grabbed my left hand off of him, that is not true. He grabbed me because he was upset about my calling 911.

4

11. I am advised that the defendant's lawyers contend that I claim I was dragged in one instance and pushed in another. However one characterizes it, he held my left arm and was digging his fingers in as he pushed me so I was falling backwards against my refrigerator and the force was sufficient to leave me with black and blue marks and the injuries requiring surgery as discussed below.
12. . . . I did not threaten or act in any menacing manner, and the same is demonstrated by the fact he was in my apartment for about 45 minutes prior to this incident, and he grabbed me only because of my calling 911 and for no other reason.
13. After beating me up as described above I was so terrified that I went with him to the bank, where I cashed my unemployment check and gave him $300, even though when I had appeared in court on the judgment that was taken against me the judge told me I had 60 days to pay it and I do not believe 60 days had gone by at the time he showed up at my door.
14. As a result of what Ronald Bill did to my arm I have had to have surgery twice. In October of 2002 I underwent surgery to repair the torn labrum shoulder muscle, and in October of 2004 I had a second surgery to repair torn triangular cartilage in my wrist. Both injuries requiring surgery were caused by the brutal treatment I sustained at the hands of Ronald Bill.

Frobel Aff. At her 50-h hearing, plaintiff testified that during the incident, she was hysterical and yelling, and that she held onto defendant Bill's elbow to escort him toward the door.

Later that day, or the next day, plaintiff telephoned Gerald Kellar, the Broome County Undersheriff, to report the incident. Kellar states in his affidavit that plaintiff alleged that defendant Bill engaged in the unlawful use of excessive force against her and "provided [him] with her version of the incident". Kellar told plaintiff that he would contact her after he discussed the matter with defendant Bill.

Kellar called defendant Bill into his office and "conducted a lengthy interview". According to Kellar, defendant Bill "explained the events that transpired". Kellar "weighed both versions of the incident" and determined that defendant Bill "was perfectly justified in his actions, and

5

that his use of force was reasonable under the circumstances." Kellar assessed the situation as follows:

> When Chief Bill was ultimately compelled to use force against Ms. Frobel, the force was only used in response to a situation that had become progressively more volatile: the officer was faced with a hysterical person, screaming for him to leave her apartment, who was growing increasingly more agitated the longer he remained in her residence, and who finally began to physically push him in an attempt to direct him out of her apartment. This, coupled with the fact that the incident took place in Ms. Frobel's kitchen where Chief Bill was posed with the very real danger of Ms. Frobel grabbing a knife or other utensil, presented a situation where the amount of force utilized by Chief Bill to restrain Ms. Frobel, and to protect himself, was perfectly reasonable.

Kellar Aff. ¶¶ 10-11 (paragraph numbers omitted). Kellar avers no disciplinary action against defendant Bill was taken and that he did not create a file on the incident. Kellar states that he later contacted plaintiff to inform her of his determination.

## III. DISCUSSION

Defendant seeks dismissal of the amended complaint on the following grounds: (1) plaintiff failed to timely serve defendant Bill; (2) plaintiff's state law negligence and gross negligence claims are outside the statute of limitations; (3) defendant David Harder should be dismissed because he is sued in his official capacity; (4) plaintiff has failed to adduce a material issue of fact on her excessive force claim and that claim should be dismissed; (5) defendant Bill is entitled to qualified immunity; (6) plaintiff has failed to show a material issue of fact on her Monell claims of municipal liability; (7) plaintiff alleged in the amended complaint that defendant Bill's actions were negligent, not intentional, and therefore her excessive force claims should be dismissed; (8) plaintiff is not entitled to punitive damages against the municipality; (9) plaintiff made inconsistent statements in her pleadings, interrogatories, and at a hearing

6

regarding the events in this case; and (10) plaintiff's claims against the municipality are barred by the Eleventh Amendment.

Plaintiff concedes dismissal of her state law claims is appropriate and points out that she does not intend to seek punitive damages against the municipality in this case. Plaintiff also consents to the dismissal of defendant David Harder, in his official capacity as Broome County Sheriff.

### A. Summary Judgment Standard

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In evaluating a motion under Federal Rule of Civil Procedure 56, the Court reviews the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any," Rule 56, to determine if there exists a genuine issue of material fact to preclude the moving party from a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 32 (1986). If the Court, viewing the evidence in the light most favorable to the nonmovant, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed issue of material fact requiring a trial. *See id*. If the nonmovant fails to carry this burden, summary judgment is appropriate. *See id*.

### B. Service

In a Memorandum-Decision and Order entered September 1, 2004, the Court granted defendants' motion to dismiss defendant Bill from the complaint on the basis that plaintiff had not served him properly. *See* Dkt. no.33. Plaintiff cross-moved to amend the complaint in

order to recommence the action against defendant Bill and thereafter effectuate proper service, and to substitute negligence and gross negligence claims for the assault and battery claims in the original complaint. The Court granted defendants' motion to dismiss as to defendant Bill, and granted plaintiff's motion to amend the complaint to add defendant Bill, but denied so much of plaintiff's motion as sought to add a cause of action for negligence and gross negligence on the basis that such claims were untimely. The Court directed plaintiff to file and serve an amended complaint within twenty (20) days. Plaintiff timely filed an amended complaint, *see* Dkt. no.34, but did not effect service on defendant Bill until October 21, 2004. Defendant Bill seeks dismissal from the amended complaint based on plaintiff's failure to effectuate service in a timely manner. According to plaintiff's counsel, "there was some delay in effecting service, which, after separate attempts, was accomplished on October 21, 2004." Although plaintiff does not offer any specifics as to why she failed to serve defendant Bill within the time specified by the Court's order, the Court finds the sanction of dismissal unwarranted in the absence of any evidence of prejudice to defendant Bill. Accordingly, defendant's motion is denied.

    **C.**    **Excessive Force**

        **1.**    **Question of Fact**

Defendants seek summary judgment on plaintiff's excessive force claim on the basis that there is no material issue of fact requiring trial. Allegations of excessive force against police officers during a seizure "must be analyzed under the Fourth Amendment and its standard of objective reasonableness." *Anderson v. Branen*, 17 F.3d 552, 558 (2d Cir. 1994) (citation omitted). Under this standard, the question is whether the officers acted reasonably in light of

the facts and circumstances of the situation they faced, without regard to their underlying motives or subjective intent. *Id*. Any force used in effecting an unlawful seizure of the person is considered excessive and unlawful. *See LaLonde v. Bates*, 166 F.Supp. 2d 713, 718-19 (N.D.N.Y. 2001) (citing *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998)).

Defendant Bill states the only force he used in attempting to collect on the judgment against plaintiff was that required to restrain plaintiff, who had placed her hands on his arm, and to calm her as she was hostile and screaming. Plaintiff admits that she was hysterical and yelling, and that she held defendant Bill's elbow in an attempt to lead him to the door. Plaintiff has also averred, however, that she was scared and crying and that defendant Bill was being rude and abusive – so she called 911 to have him removed from her house. Plaintiff stated that this enraged defendant Bill and he grabbed her arm and yanked it up over her head, digging his fingers into her arm and causing her substantial pain. Plaintiff claims she had to have two surgeries on her arm as a result of defendant Bills actions. If a jury were to credit plaintiff's version, it could find that defendant Bill's conduct was unreasonable under the circumstances. The Court therefore denies defendant's motion for summary judgment on plaintiff's excessive force claim.

    **2.**    **Qualified Immunity**

Defendants argue that defendant Bill is entitled to qualified immunity on plaintiff's excessive force claim. Qualified immunity shields governmental officials "from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were clearly established at the time." *Loria v. Gorman*, 306 F.3d 1271, 1281 (2d Cir. 2002) (internal quotation marks and citation omitted). The court must conduct a two part

inquiry to determine if an official is entitled to qualified immunity.  First, the court must determine whether, in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right.  *See id*.  Second, if the court determines that the officer did violate a constitutional right, then the court must determine whether the right was clearly established at the time it was infringed.  *See id*.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. (citation omitted).  In *Loria,* the Second Circuit explained, "if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions."  *Id.*  "If the officer reasonably believed that his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken."  *Id.*  "The objective reasonableness test is met – and the defendant is entitled to immunity – if officers of reasonable competence could disagree on the legality of the defendant's actions."  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotation marks and citation omitted).

As discussed above, viewing the facts in the light most favorable to plaintiff, defendant Bill's conduct violated plaintiff's Fourth Amendment right to be free from excessive force.  It is uncontroverted that such a right was clearly established at the time of the incident.  Moreover, crediting plaintiff's version of the facts, officers of reasonable competence would agree that defendant Bill's conduct in threatening plaintiff, becoming enraged when she tried to get help by calling 911, and grabbing her arm so tightly as to cause injury, was unlawful.  Accordingly, defendants' motion for summary judgment on this basis is denied.

      **3.**      **Excessive Force and Negligence Claims**

Defendants seek dismissal of plaintiff's excessive force claim on the basis that the amended complaint alleges intentional and negligent conduct. *See e.g. Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y.2002) (holding that "[w]hen a plaintiff asserts excessive force and assault claims which are premised upon a defendant's allegedly intentional conduct, a negligence claim with respect to the same conduct will not lie"). As previously discussed, however, plaintiff has consented to dismissal of her negligence claims. Accordingly, defendant's argument need not be addressed.

### D.     Plaintiff's Inconsistent Statements

Defendants assert that plaintiff has made inconsistent statement at various stages of this litigation regarding the incident at issue. Defendants argue that "[t]hese inaccuracies are strewn throughout the documents and certainly weigh against her veracity" and therefore seek dismissal of this action in its entirety. It is well settled that a plaintiff may not "create a material issue of fact by submitting ... affidavit[s] disputing h[er] own prior sworn testimony" in order to defeat a defendant's summary judgment motion. *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir.1991) (citing cases); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 304 (2d Cir. 2000) ("[I]t is generally accepted that a later affidavit may not supersede a prior deposition".).

There are variations between plaintiff's sworn statements and testimony. For example, in her complaint, amended complaint, and Notice of Claim, plaintiff alleges that defendant Bill slammed her into the refrigerator repeatedly - - at her 50-h hearing, however, plaintiff testified that defendant slammed her into the refrigerator, but did not say that he did so repeatedly. There are also variations between plaintiff's statements about whether defendant Bill "dragged"

her or "pushed" her, and how far, i.e. 15 feet or 8 feet. The Court finds the variations are not so significant as to warrant total disregard of her submissions, or dismissal of the amended complaint in its entirety. Further, even if the Court were to rely on plaintiff's tamest version of the incident, there would still be a material issue of fact requiring trial as to whether defendant Bill used excessive force against her by pushing her 8 feet and slamming her into the refrigerator only one time. Moreover, while the Court may disregard a later inconsistent statement, *see White*, *supra*, to the extent defendants request that the Court weigh these consistencies against plaintiff's credibility in determining this motion, the Court declines to do so - - the assessment of credibility is a matter "for the jury, not for the court on summary judgment." *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir.1996). Accordingly, defendants' motion for summary judgment dismissing the amended complaint in its entirety is denied.

    **E.**    **Municipal Liability**

Defendants seek dismissal of plaintiff's claims against Broome County. There is no *respondeat superior* liability against a municipality under 42 U.S.C. § 1983 for conduct by employees below the policymaking level. *Monell v. New York City Dep't. of Social Services*, 436 U.S. 658 (1978). To establish liability against a municipality for conduct by employees such as police officers, a plaintiff must show that the claimed constitutional violation resulted from a municipal custom or policy. *Id*.

In this case, plaintiff argues that Broome County's failure to maintain a procedure for investigating complaints of excessive force, together with its failure to investigate plaintiff's complaint of excessive force, demonstrate Broome County's policy or practice of deliberate indifference to its police officers' use of excessive force.

As an initial matter, plaintiff submitted no evidence which would support her assertion that Broome County had no procedure for investigating complaints of excessive force.  Indeed, defendants have submitted a document entitled "Broome County Sheriff's Civil Office Policy Statement", which sets forth a procedure for investigating citizen complaints that allege "inappropriate behavior, misconduct or a violation of the law".  Thus, plaintiff's claim in this regard is without merit.  Accordingly, the Court turns to plaintiff's argument that Broome County failed to investigate her excessive force complaint.  Plaintiff bases her claim on her own experience and asserts that Undersheriff Kellar was deliberately indifferent to her complaint of excessive force because he did not carry out a meaningful investigation of her complaint.

A municipality may be liable under § 1983 if it were "knowingly and deliberately indifferent to the possibility that its police officers were wont to use excessive force and that this indifference was demonstrated by [the County's] failure ... to exercise reasonable care in investigating claims of police brutality in order to supervise the officers in the proper use of force".  *Fiacco v. City of Rensselaer*, 783 F.2d 319, 326 (2d Cir.1986).  Further, "a single instance of deliberate indifference on the part of a policymaker is sufficient to provide a basis for municipal liability; there is no need . . . to establish that policymaking officials maintained a consistent 'policy' of deliberate indifference."  *Amnesty America v. Town of W. Hartford*, 631 F.3d 113, 129 (2d Cir. 2004).  Where the contention is that the alleged action was taken by an official whose actions represent official policy, "the Court must determine whether that official had final policymaking authority in the particular area involved."  *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).  "It does not suffice for these purposes that the official has been granted discretion in the performance of his duties."  *Id*.  The Second Circuit has instructed that "this is

a legal question to be answered on the basis of state law." *Id*. (internal citations omitted).

In this case, plaintiff claims that Undersheriff Kellar was a final policymaker.[1] Plaintiff bases her claim on Section 652(1) of the New York County Law, which states

> Within ten days after entering upon the duties of the office, the sheriff shall appoint an undersheriff to serve during his pleasure. During the absence or inability of the sheriff to act or when a vacancy shall occur in the office of the sheriff, the undersheriff shall, in all things, execute the duties of the office of sheriff until a new sheriff is elected or appointed and has qualified.

In this case, there is no evidence that Sheriff Harder was not acting in his capacity of sheriff at the time of the incident. Plaintiff has neither adduced evidence nor cited other legal authority from which the Court could conclude that Undersheriff Kellar was Broome County's final policymaking official on the issue of the use of excessive force by its law enforcement officers. Further, the Broome County Sheriff's Civil Office Policy Statement, which outlines the procedure for handling citizen complaints, was approved by Sheriff David Harder, and provides, in relevant part, that: "Any citizen complaint that alleges inappropriate behavior, misconduct or a violation of the law by any member will be treated as a personnel complaint

---

[1] To the extent plaintiff further argues that Sheriff David Harder was personally involved, and aware that plaintiff had voiced a complaint that defendant Bill had used excessive force against her, and was deliberately indifferent because "the only action he took was to review Bill's disciplinary record", her argument is without merit. Plaintiff bases this assertion on Sheriff Harder's affidavit in support of this motion, in which he states:

> A review of all of Chief Civil Deputy Ronald Bill's disciplinary records indicates that, outside of the present lawsuit, Chief Bill has never been the subject of an use of excessive force investigation, nor have allegations involving the use of excessive force ever been made against him during his twenty-four years of service.

While a reasonable fact-finder can infer from the above statement that Sheriff Harder is aware of plaintiff's allegation of excessive force at present, nothing about Sheriff Harder's statement indicates knowledge on or about March 22, 2002, when plaintiff made her complaint.

and shall be made to an on duty supervisory officer holding the rank of Sergeant or above." Section IV(c)(1). There is no evidence that Undersheriff Kellar, in investigating plaintiff's complaint, was doing more than exercising the discretion granted to him under the Broome County Policy. Thus, the single act of alleged deliberate indifference, is insufficient, as a matter of law, to raise a question of fact as to municipal liability. Accordingly, Broome County is entitled to summary judgment on that claim. Consequently, the Court need not consider defendants' remaining arguments regarding plaintiff's municipal liability claims.

**F.     Procedural Due Process Claim**

In her opposition papers, plaintiff asserts that defendants, who moved for summary judgment dismissing the amended complaint, have not moved for summary judgment on her "due process claim that the very manner in which defendant Bill sought to execute upon the judgment that was taken against plaintiff was unconstitutional." In their reply papers, defendants state that defendant Bill's actions were legal, but that plaintiff, in any event, failed to plead such a cause of action in her amended complaint.

Although this issue was first raised in plaintiff's opposition papers, plaintiff briefed the issue fully and had the opportunity to submit evidence in support of her claim. Likewise, defendants, who moved for summary judgment dismissing the entire amended complaint, had ample opportunity to respond and submit evidence in support of their arguments. Accordingly, the Court has exercised its discretion in considering defendant's reply argument in support of summary judgment on plaintiff's due process claim, *see, e.g., Playboy Enters., Inc. v. Dumas*, 960 F.Supp. 710, 720 n. 7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court."), and finds, for the foregoing reasons, that defendants are

entitled to summary judgment dismissing this claim.

Plaintiff's due process arguments in her memorandum of law[2] center on whether she received the notice required by the New York Civil Practice Law and Rules prior to law enforcement's conducting of an income or property execution; defendant Bill's attempt to take her personal property, including her television and computer, which, under N.Y. C.P.L.R. § 5205, are exempt from application to the satisfaction of money judgments; and defendant Bill's taking of $300 from her unemployment check, money that "may" also be exempt.

To prevail on a claim that defendants deprived her of procedural due process in violation of the Fourteenth Amendment, the plaintiff must show that she "possessed a protected liberty or property interest, and that [s]he was deprived of that interest without due process." *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir.) (per curiam), *cert. denied*, 525 U.S. 907 (1998).

Plaintiff's counsel claims in his affidavit that plaintiff never received the § 5222(e) notice, or the notice required by C.P.L.R. § 5231 prior to a property or income execution on a judgment.[3] Plaintiff's counsel, however, lacks personal knowledge of whether plaintiff received this or any other notice, and there is no evidence in admissible form which would substantiate plaintiff's claim in this regard.

---

[2]Defendants' interrogatory, ¶ 18, directed plaintiff to "specify in detail the facts supporting the allegation that the defendant's conduct was unlawful, and that plaintiffs [sic] civil rights under the due process clauses of the United States Constitution and the New York State Constitution were violated". In contrast to the arguments plaintiff advances in her memorandum of law, plaintiff, in a sworn statement, responded to defendants' interrogatory as follows: "The defendant's conduct violated the plaintiff's right to due process in that he presented himself as a police officer and insisted up entering her apartment without probable cause. He further threatened to seize her personal property, and used excessive physical force and intimidation."

[3]Plaintiff testified at her 50-h hearing that she received a "notice to garnishee wages".

Further, even assuming the truth of plaintiff's claim that defendant Bill threatened to take her television and computer, items which may be exempt from collection to satisfy a judgment, *see* N.Y. C.P.L.R. § 5205, it is undisputed that defendant Bill did not take those items. Thus, plaintiff has failed to show that defendant Bill deprived her of her interest in that property. *See Hynes*, 143 F.3d at 658, *supra*.

Finally, citing section N.Y. C.P.L.R. § 5222(e), plaintiff claims that defendant Bill's taking of $300.00 from her unemployment check, violated her right to procedural due process. The notice in N.Y. C.P.L.R. § 5222(e) states that unemployment benefits "may be exempt" from collection, and further states: "If you claim that any of your money that has been taken or held is exempt, you may contact the person sending this notice". N.Y. C.P.L.R. § 5222(e). As already discussed, there is no evidence from which a fact finder could conclude that plaintiff did not receive the requisite notice. Further, it is undisputed that plaintiff never sought to recover the $300, or argued to the individual to whom she is indebted, that the money was exempt. Thus there is no issue of material fact requiring trial on plaintiff's due process claim.

Plaintiff also argues in her opposition papers, that the municipality should be held liable for the alleged violation of her due process rights. Even if plaintiff could show defendant Bill violated her right to due process, because there is no *respondeat superior* liability under § 1983, *see Monell*, 436 U.S. 658, no evidence of a policy, custom, or practice of such violations in the County of Broome, *see id.*, and no evidence that an individual with policymaking authority on this issue was involved, *Amnesty America*, 631 F.3d at129, Broome County is entitled to summary judgment as a matter of law on this claim as well.

**IV.     CONCLUSION**

17

For the foregoing reasons, it is hereby

ORDERED that defendants' motion for summary judgment dismissing plaintiff's Monell claims against the County of Broome, is GRANTED; and it is further

ORDERED that defendants' motion for summary judgment dismissing plaintiff's negligence claims is GRANTED; and it is further

ORDERED that defendants' motion for summary judgment on all claims against defendant David Harder is GRANTED; and it is further

ORDERED that defendants' motion for summary judgment dismissing plaintiff's procedural due process claim is GRANTED; and it is further

ORDERED that defendants' motion for summary judgment is otherwise denied in its entirety.

IT IS SO ORDERED.

DATE:  September 30, 2005

*Norman A. Mordue*
Norman A. Mordue
U.S. District Judge